OF THE

## STATE OF IOWA.

AT

## DES MOINES, JANUARY TERM, A. D. 1903.

AND IN THE FIFTY-SEVENTH YEAR OF THE STATE.

---

CLINTON L. NOURSE v. WILLIAM P. COLLIS, Appellant.

Action to Quiet Title: PURCHASER AT JUDICIAL SALE: DEED HELD AS
SECURITY. Plaintiff purchased at an execution sale on a judg-
ment against C, his interest in the property in question, which
was the right to a conveyance on payment of the balance of
the purchase price. After the decree and before sale, defend-
ant at the request of C, took a conveyance from C's grantors
as security for the payment of the unpaid purchase price:
*held*, that in an action to quiet title that the interest of de-
fendant could not be devested until he was reimbursed the
amount paid by him, with interest as provided in the contract
of sale.

*Appeal from Polk District Court.*—HON. C. P. HOLMES,
Judge.

TUESDAY, JANUARY 20, 1903.

(38)

Action to quiet title to part of a city lot. The defendant appeals from a decree granting the relief prayed.— *Modified* and *affirmed*.

*Brennan & Brennan* for appellant.

*Clinton L. Nourse, pro se.*

Ladd, J.—Prior to November 3, 1893, title to the south twenty-four feet of the west eighty feet of lot eighteen in division two of Grinnel's addition to the city of Des Moines was in the executors of Darius E. Kent. On that day they contracted to sell the same to A. E. Clark, and convey it to him, upon the payment of $250 down, and $1,000 in annual installments of $200 each, commencing one year hence, evidenced by five promissory notes of the latter.

February 8, 1895, Clark agreed with John Collis to assign the above contract to him upon the payment of $684 in cash, and the fulfillment of his obligations to the executors. Collis was at that time the owner of the remainder of the lot, and, on April 10th following, executed a deed therefor to Martin, who on the same day reconveyed it; but this last deed was withheld from record until the 7th of August, when it was filed. Collis then executed another deed to Mary Collis, his divorced wife. In the meantime, June 22d, Elmer Cox had begun an action against him for alienating his wife's affections, in which judgment was rendered January 25, 1896. Four days later Cox commenced suit in equity to set aside this conveyance and subject the lot to the payment of his judgment. In that action Collis set up in his answer that, while the legal title had stood in his name, Mary Collis had furnished the purchase money and was the actual owner. She also claimed ownership. Decree was finally entered establishing a lien in Mary Collis' favor to the amount of $5,250, and, subject thereto, directing the sale of the lot for satis-

faction of Cox's claim. *Cox v. Collis*, 109 Iowa, 270. Special execution issued July 12, 1900. The property was sold to plaintiff August 21st, without redemption, and December 19th of the same year he paid into the court the amount necessary to satisfy the lien.

On the 15th day of January, 1899, the executors of Darius E. Kent signed and acknowledged a quit claim deed of the portion of the lot first mentioned to William P. Collis, but it was not recorded until July 31, 1900. This controversy is over defendant's claim to the property under the deed last mentioned. It is his contention that John Collis was acting as his agent in purchasing the property of Clark; that he furnished the money used for that purpose, and is the *bona fide* owner of the lot. As the contract with Clark indicated a sale to John Collis, the burden was on the defendant to prove that the purchase was for his benefit, and this we think he has failed to do. A discussion of the evidence would be of no advantage to any one. It is enough to say that a careful examination of the record has convinced us that John Collis was the real purchaser, and that defendant acquired no interest in the premises until the negotiations under which his deed was obtained.

II. It appears that prior to December 20, 1898, two of the notes executed to the executors by Clark had been paid. On that day John Collis inquired of their agent the precise amount which would be due January 15, 1899; adding that he would see if his brother in New York would forward the money, and take the deed in his name. The letter of the agent in response, containing the desired information, and suggesting a deed to Clark, and that the latter convey to the brother, was forwarded to defendant, who indorsed thereon: "Will forward the above amount if you will have deed made out in my name, as I think I ought to be protected in the matter." As a result, defendant paid the agent $763.80, the amount due on the contract, and received from the executors of Kent a quit

claim deed to the property January 15, 1899. They also delivered the notes of Clark, indorsed without recourse. All this occurred subsequent to the decree in the district court subjecting the lot to the payment of Cox's judgment. Tha affected only the interest of John Collis in this parcel of ground,—the right to a conveyance of it upon the payment of the balance of the purchase price. He has not acquired any greater right since. That only was sold to plaintiff under the special execution. Nothing was surrendered by John Collis to the defendant, and the latter, in acquiring title under the quit claim deed from the executors, took it subject to plaintiff's right to payment under the contract, and to have it conveyed to him. Until defendant has been reimbursed the amount paid by him, with interest from the date of payment at the rate of eight per cent., per annum, with annual rents, as stipulated in the contract, his title should not be devested. The decree will be modified accordingly.—MODIFIED and AFFIRMED.

BISHOP C. J., took no part.